UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | Case No. 23-14679-MER |
| ) | |
| BENDED PAGE, LLC ) | Chapter 11, Subchapter V |
| EIN: 85-2948361 ) | |
| ) | |
| Debtor. ) | |

**MOTION TO CONTINUE CONFIRMATION HEARING AND TO EXTEND RELATED DEADLINES**

Bended Page, LLC ("Debtor"), through its counsel, ONSAGER | FLETCHER | JOHNSON | PALMER, LLC, files this Motion to Continue Confirmation Hearing and to Extend Related Deadlines (this "Motion") as follows:

### JURISDICTION AND VENUE

1. On October 16, 2023, Debtor filed its voluntary petition for relief under subchapter V, Chapter 11 of title 11 of the United States Code (the "Petition Date"). Debtor is a debtor-in-possession.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. § 1409. The relief requested in this Motion constitutes a core matter pursuant to 28 U.S.C. § 157(b)(2)(A).

### BACKGROUND

3. Debtor owns and operates the Tattered Cover bookstores - one of the largest independent retail booksellers in the United States. The Tattered Cover has been an iconic Denver institution and community gathering place for people and the arts since 1971.

4. Debtor currently operates 4 brick and mortar retail locations around Colorado, including two locations in downtown Denver and locations in Aurora and Littleton. Debtor also

licenses the name Tattered Cover to a bookseller that operates on each concourse of the Denver International Airport. Debtor leases all its retail locations, except the Denver International Airport stores, which are licensed stores operated by a third-party.

5. Prior to commencing this proceeding, as of June 2023, the Debtor operated seven brick and mortar store locations but suffered a lack of cash that was suffocating its inventory, sales, events, basic property repairs, and all other operations. The Debtor's former CEO had recently left the company. The Debtor's relationships with publishers and other vendors were severely strained. Most publishers had stopped sending books and author events to the Debtor. The Debtor's stores were poorly stocked and some stores had ongoing maintenance and operations issues, all of which contributed to slowing sales.

6. Prior to commencing this proceeding, in July 2023, the Debtor's Board took action to address the Debtor's critical condition. It appointed Brad Dempsey as CEO to develop and lead an effort to restructure the company with its existing employees. The Debtor immediately moved to review and improve its expectations, finances, relationships, and operations. The Debtor obtained an initial $300,000 of debt financing to improve its inventory. In addition to improving inventory, the Debtor improved store lighting, maintenance, and store operations. Mr. Dempsey met with all landlords and traveled in September 2023 to New York City to meet with the Debtor's largest publisher vendors to restore relationships and seek cooperation in the company's restructuring.

7. In mid-October 2023, to support and accelerate broader restructuring objectives and to enable the company to purchase inventory for the critical holiday season, the Debtor filed its chapter 11 to obtain additional and essential debtor-in-possession financing. Debtor obtained a secured debtor-in-possession loan for up to $1,275,000 (the "DIP Loan") from Read Colorado

LLC (the "DIP Lender"), which loan was approved by the Court on November 16, 2023. [Docket No. 141]. All amounts due under the DIP Loan become due and payable upon the effective date of Debtor's plan of reorganization. No payments are required to be made until maturity.

8. Given the company's lack of cash and financing options, the DIP Loan was essential to the company's ability to continue its operations past October 2023, its restructuring process, its ability to serve customers into 2024, and its ability to be positioned for a potential sale. In addition, the DIP Loan provided other significant benefits to the company's employees and community as the DIP Loan support of ongoing operations facilitated the ongoing payment of wages and benefits for more than 70 Colorado employees, the payment of severance to employees released following store closures, the payment of rent to keep four local store locations operating and hosting events, and the payment of more than $300,000 in sales taxes to local communities.

## THE PLAN

9. On March 7, 2024, Debtor filed its Amended Subchapter V Plan of Reorganization (the "Plan") [Docket No. 257]. On March 18, 2024, the Court entered its Order Setting Confirmation Hearing (the "Order") [Docket No. 261], pursuant to which the Court set the following deadlines relating to confirmation of the Plan:

| Deadline | Date |
|---|---|
| Deadline to mail the Plan, the Order, and a Ballot to creditors and interest holders entitled to vote on the Plan | March 27, 2024 |
| Deadline for creditors and interest holders to submit ballots accepting or rejecting the Plan | 5:00 p.m. on April 24, 2024 |
| Deadline to file objections to the Plan | April 24, 2024 |
| Deadline for Debtor to file a summary report of ballots received and to amend Plan in response to any objection(s) | May 25, 2024 |
| Deadline to file and exchange witness and exhibit lists | May 21, 2024 |

| | |
|---|---|
| Deadline to deliver PDF copies of exhibits to chambers | May 26, 2024 |
| Confirmation Hearing | 9:30 a.m. on May 28, 2024 |

10. An important feature of the DIP Loan was the ability of the DIP Lender, in its sole discretion, to convert the DIP Loan debt to a preferred class of equity. The Plan contemplated that the DIP Lender would convert its debt to equity, and provides, among other things, that all of Debtor's projected disposable income will be used for distributions to creditors as set forth in the Amended Plan.

11. Debtor was recently informed that the DIP Lender does not intend to convert its debt to equity.

## RELIEF REQUESTED

12. For the reasons set forth below, Debtor requests that the Court (a) reschedule the confirmation hearing and (b) extend certain deadlines set forth in the Order. Debtor requests that the confirmation hearing be rescheduled for a date on or after June 17, 2024. Debtor further requests that the deadlines set forth in the Order be extended as follows:

| | |
|---|---|
| Deadline to file an amend the Amended Plan | April 26, 2024 |
| Deadline to mail the Plan, the Order, and a Ballot to creditors and interest holders entitled to vote on the Plan (or Amended Plan if filed) | April 29, 2024 |
| Deadline for creditors and interest holders to submit ballots accepting or rejecting the Plan (or Amended Plan if filed) | May 27, 2024 at 5:00 p.m. |
| Deadline to object to the Plan (or Amended Plan if filed) | May 27, 2024 |
| Deadline for Debtor to file a summary report of ballots received and to amend Plan (or Amended Plan if filed) in response to any objection(s) | 7 days prior to the rescheduled confirmation hearing |

| | |
|---|---|
| Deadline to file and exchange witness and exhibit lists | 7 days prior to the rescheduled confirmation hearing |
| Deadline to deliver PDF copies of exhibits to chambers | 3 days prior to the rescheduled confirmation hearing |
| Confirmation Hearing | On or after June 17, 2024 |

13. While the Plan provides for a sale process to occur after confirmation, in the event that the DIP Lender did not convert to equity, Debtor believes that initiating a sale process prior to confirmation of the Plan is appropriate. Debtor also believes that amendments to the Plan to address a pre-confirmation sale process and eliminate the Plan features related to converting the DIP Loan to equity will be necessary. Finally, Debtor anticipates that parties in interest will want additional information about a sale process before considering the Plan.

14. Due to the DIP Loan and the significant positive operational improvements that have been made by the Debtor's team of officers and employees over the past months, the Debtor is in far better condition to pursue a sale. Since filing for bankruptcy, the Debtor has reduced its size and consolidated its inventories, restored relationships with publishers and vendors and substantially improved the quantity and quality of its inventories at its remaining stores, improved basic operations and reduced expenses, enhanced marketing efforts and engagement, and elevated the quality and consistency of its author and community events. As a result, sales have continued to improve, with February sales up 14% over same store sales in 2023, and March month-to-date sales up 20% over 2023 (despite closures incurred for inventory and snowstorms). In addition, Debtor's improved marketing and events efforts have received positive recognition from publishers and other prominent independent bookstores across the country.

15. As the Debtor's condition has improved, certain parties have expressed an interest in acquiring some or all of Debtor's assets. Those parties have signed non-disclosure agreements

and are reviewing data and information to evaluate a potential offer to purchase some or all of Debtor's assets. Debtor anticipates reaching out to others in the industry and that industry, local, and national news, business, and trade media outlets will report that Debtor's assets are for sale. Thus, Debtor anticipates moving forward with a sale process, including seeking approval of bid procedures, promptly.

16. Debtor asserts that the proposed extension of the Plan confirmation timing is in the best interests of Debtor and its creditors.

**WHEREFORE**, Debtor requests that the Court enter an Order granting this Motion, and for such other relief as the Court deems proper.

Dated: March 29, 2024                                Respectfully submitted,

**ONSAGER | FLETCHER | JOHNSON | PALMER LLC**

*s/ Andrew D. Johnson*
   Andrew D. Johnson, #36879
   Gabrielle G. Palmer, #48948
600 17th Street, Suite 425 North
Denver, Colorado 80202
Ph: (720) 457-7061
ajohnson@OFJlaw.com
gpalmer@OFJlaw.com

*Attorneys for Bended Page, LLC*


### CERTIFICATE OF SERVICE

I certify that on March 29, 2024, I served a copy of the foregoing and proposed order on all parties requesting electronic notice through the court's CM/ECF system pursuant to the Federal Rules of Bankruptcy Procedure and the Court's Local Rules.


*s/ Barbara A. Moss*